```
            IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF OHIO
                      EASTERN DIVISION
```

John Van Houten,                     :

      Plaintiff,               :

   v.                               :      Case No. 2:14-cv-356

                                     :      JUDGE EDMUND A. SARGUS, JR.
Commissioner of Social Security,            Magistrate Judge Kemp
                                     :
      Defendant.

<u>REPORT AND RECOMMENDATION</u>

      I.   <u>Introduction</u>

     Plaintiff, John Van Houten, filed this action seeking review of a decision of the Commissioner of Social Security denying his application for disability insurance benefits. That application was filed on October 21, 2011, and alleged that Plaintiff became disabled on November 6, 2010.

      After initial administrative denials of his claim, Plaintiff was given a hearing before an Administrative Law Judge on April 10, 2013. In a decision dated April 26, 2013, the ALJ denied benefits. That became the Commissioner's final decision on March 21, 2014, when the Appeals Council denied review.

     After Plaintiff filed this case, the Commissioner filed the administrative record on June 25, 2014. Plaintiff filed his statement of specific errors on September 26, 2014, to which the Commissioner responded on October 28, 2014. Plaintiff filed a reply on November 7, 2014, and the case is now ready to decide.

    II.  <u>Plaintiff's Testimony at the Administrative Hearing</u>

     Plaintiff, who was 64 years old at the time of the administrative hearing and who completed two years of college, testified as follows. His testimony appears at pages 28-45 of the administrative record.

     Plaintiff first testified that he stopped working on his

alleged onset date, November 6, 2010, due to having surgery to have parts of his intestines removed. He has Crohn's disease in the small intestine, and also had a large polyp in his large intestine. He was first diagnosed with Crohn's disease in 1979. He had gone back to work on a part-time basis several months after the surgery, but was unable to continue that work.

When asked about his daily activities, Plaintiff said that he fishes and paints, and has taught himself to play the guitar. He also said that his Crohn's disease had returned after his surgery and he was taking Humira for it, which had stabilized his condition to some extent. He further explained that Crohn's is a progressive disease and that he was in remission for two years in the 1980s, but had gotten worse since then. Still, he had been able to work, including at his last job, which was a department manager at Lowe's. That job and a prior job working security did require him to be on his feet all day, but the Lowe's job entailed more lifting.

Plaintiff's primary physical issue seemed to be stamina. He testified that even working part-time for four hours a day, two days a week, had been too much for him. He must take a break even when doing household chores. He also described constant shoulder pain, which he treats with aspirin. Additionally, he testified that abdominal cramps, signaling the need to use the restroom, could come upon him at any time, even with his taking medication to control that problem.

### III. The Medical Records

The medical records in this case are found beginning on page 179 of the administrative record. The pertinent records - those relating to Plaintiff's statement of error - can be summarized as follows.

Plaintiff's surgery took place on November 15, 2010. It was described as a "lap right hemicolectory with resection of the

terminal ileum ...." (Tr. 188). The primary purpose of the surgery appeared to be to remove some tubular adenomas and a polyp from his large intestine. Postoperative imaging showed a significant amount of Crohn's disease present in the terminal ileum. Plaintiff tolerated the surgery well and was discharged on November 19, 2010. At that point, he was not given a return to work date. (Tr. 189). However, on January 31, 2011, he was released to return to work on February 7, 2011, without restrictions. (Tr. 197). Earlier in 2010, he underwent an inguinal hernia repair, and at that time his Crohn's disease was described as being in remission. (Tr. 324). However, the surgical notes indicate that Plaintiff's Crohn's disease was probably aggravated due to the stress of the surgery.

  A health summary dated November 9, 2011, indicated that Plaintiff was seen at the VA clinic for ongoing management of his Crohn's disease. He reported two flare-ups per year. He also told Dr. Borchers that he did not have the endurance to work even on a part-time basis and that he had worsening episodes of dizziness. He had lost a substantial amount of weight since the surgery. The diagnostic assessment included Crohn's disease, and Plaintiff was referred to Dr. Borchers, who had been treating him for his intestinal problems, for further evaluation. (Tr. 333-38). A note signed by Dr. Borchers on January 4, 2012, contained a diagnosis of mild or moderate systemic disease without functional limitation. (Tr. 456). At an appointment on February 28, 2012, Plaintiff agreed to begin using Humira to control his Crohn's disease, reporting recurrent episodes in the small bowel as well as some obstructive symptoms. He reported occasional diarrhea. (Tr. 574-75). A progress note from January, 2013 showed that he complained of bloating on a regular basis. (Tr. 613).

  Dr. Borchers filled out a "Crohn's & Colitis Medical Source

Statement" on February 26, 2013.  He said he had first seen Plaintiff on March 10, 2010, and saw him three times per year. He listed Plaintiff's prognosis as "good" and identified his symptoms as chronic diarrhea, abdominal distention, and nausea. Dr. Borchers also noted that Plaintiff had periodic partial obstructions but that they resolved spontaneously.  Plaintiff was responding to Humira.  As far as his limitations were concerned, Dr. Borchers said that Plaintiff needed ready access to a restroom, would have to take unscheduled restroom breaks every two hours, lasting fifteen minutes each, would need to lie down once every week or two for 30 minutes, would be off task 10% of the time, would have good days and bad days, and would miss an average of three days per month.  He could tolerate low work stress, however.  (Tr. 622-25).

Dr. Torello reviewed Plaintiff's claim initially and concluded, in a ruling dated December 20, 2011, that he did not have a severe impairment.  (Tr. 54-55).  That decision was affirmed by another reviewer.  (Tr. 62-64).  Neither of those physicians had the benefit of Dr. Borchers' opinions as expressed on the "Crohn's & Colitis Medical Source Statement."

### IV.  The Vocational Testimony

Carl Hartung was the vocational expert in this case.  His testimony begins on page 45 of the administrative record.

Mr. Hartung testified that Plaintiff's past work included security guard, vending machine attendant, department manager, and gate agent.  Those jobs ranged from unskilled to skilled, and were performed at either the light or medium exertional levels.

Mr. Hartung was then asked some questions about a hypothetical person who could work only at all exertional levels and who was allowed to be off task for five percent of the day. The person also needed a low-stress job involving only occasional decision-making and only occasional changes in the work setting.

-4-

The person would also incur six absences per work year.  He said that such a person could not do any of Plaintiff's past work or any other jobs because being off task for five percent of the time, in addition to regularly-scheduled breaks, would not be acceptable for either Plaintiff's past work or other unskilled jobs.  If, however, the person did not have that particular limitation, he or she could so all of Plaintiff's past work except department manager.

In response to a third hypothetical describing a person who, again, could work at all exertional levels, needed the same limitations on the work setting, and had some restrictions in the use of the left arm, Mr. Hartung testified that the prior jobs which Plaintiff held (except for department manager) could still be performed.  No jobs could be done by that same person if he or she needed four additional fifteen-minute breaks per day, was off task ten percent of the time, and would miss three days of work per month.  The same would be true of a person who had to leave the work area twice a week for an unscheduled 30-minute break.

V.   The Administrative Law Judge's Decision

The Administrative Law Judge's decision appears at pages 12-21 of the administrative record.  The important findings in that decision are as follows.

The Administrative Law Judge found, first, that Plaintiff met the insured status requirements of the Social Security Act through June 30, 2014.  Next, he found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of November 6, 2010.  Going to the second step of the sequential evaluation process, the ALJ determined that Plaintiff had severe impairments including Crohn's disease and chronic degenerative changes in the left shoulder humeral head laterally.  The ALJ also found that these impairments did not, at any time, meet or equal the requirements of any section of the Listing of

Impairments (20 C.F.R. Part 404, Subpart P, Appendix 1).

Moving to the step four of the sequential evaluation process, the ALJ found that Plaintiff had the residual functional capacity to perform work at all exertional levels but had certain nonexertional limitations, including pushing or pulling frequently (but not continually) with the left arm, reaching overhead only occasionally, and working in a low-stress job defined as only occasional decision-making and occasional changes in the work setting.  He would also be absent six days per year due to medical symptoms.  The ALJ found that, with these restrictions, Plaintiff could do his past relevant work as a security guard, vending machine attendant, and gate agent. Consequently, the ALJ concluded that Plaintiff was not entitled to benefits.

VI. <u>Plaintiff's Statement of Specific Errors</u>

In his statement of specific errors, Plaintiff raises a single issue: the ALJ violated the "treating physician" rule found in 20 C.F.R. §404.1527(c) with respect to the opinions expressed by Dr. Borchers.  That issue is evaluated under the following legal standard.

<u>Standard of Review.</u>  Under the provisions of 42 U.S.C. Section 405(g), "[t]he findings of the Secretary [now the Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'" <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Company v. NLRB</u>, 305 U.S. 197, 229 (1938)).  It is "'more than a mere scintilla.'" <u>Id</u>.  <u>LeMaster v. Weinberger</u>, 533 F.2d 337, 339 (6th Cir. 1976).  The Commissioner's findings of fact must be based upon the record as a whole. <u>Harris v. Heckler</u>, 756 F.2d 431, 435 (6th Cir. 1985); <u>Houston v. Secretary</u>, 736 F.2d 365, 366 (6th

Cir. 1984); Fraley v. Secretary, 733 F.2d 437, 439-440 (6th Cir. 1984).  In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" Beavers v. Secretary of Health, Education and Welfare, 577 F.2d 383, 387 (6th Cir. 1978) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)); Wages v. Secretary of Health and Human Services, 755 F.2d 495, 497 (6th Cir. 1985).  Even if this Court would reach contrary conclusions of fact, the Commissioner's decision must be affirmed so long as that determination is supported by substantial evidence.  Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983).

The Treating Physician

The only treating source opinions came from Dr. Borchers. The ALJ evaluated his opinions in this way:

> As for the opinion evidence, the claimant's representative argued that the undersigned should adopt the opinion of Dr. Borchers, the claimant's treating physician (Exhibit 9E).  Dr. Borchers opined that the claimant would need to be near a bathroom, require unscheduled breaks during the workday, and would be excessively absent from work due to symptoms despite surgical and medical management (Exhibit 6F).  However, the undersigned gives Dr. Borchers' opinion little weight, as his opinion is extreme in light of the summarized medical evidence.  Although the claimant underwent surgery for Crohn's disease, the record supports that surgery and medical management have been generally successful in controlling the claimant's symptoms.  Dr. Borchers noted that the claimant was responding to Humira and the claimant reported decreased episodes of diarrhea and improvement in his bowel movement generally.  Moreover, the claimant had Crohn's disease since 1979 and worked steadily despite flares, which is inconsistent with Dr. Borchers' opinion that the claimant would be precluded from work, as the record does not support a significant worsening of the claimant's condition.  While the record suggests occasional flares, generally occurring in the spring and fall, the residual functional capacity adequately accommodates this limitation.

(Tr. 19).  Plaintiff contends that this evaluation is flawed because it does not reflect that the ALJ took into account the various factors set forth in 20 C.F.R. §404.1527(c) which apply to the opinions of treating physicians - including the length, nature and extent of the treating relationship, Dr. Borchers' specialization, and the consistency and supportability of his opinions - nor that the ALJ considered whether to give the opinions controlling weight before deciding to reject them. Plaintiff also argues that the reasons given for giving little weight to Dr. Borchers' opinions are not supported by the record.

The Court of Appeals recently, and succinctly, set forth the legal standard for reviewing an ALJ's evaluation of opinions of treating sources. In <u>Gayheart v. Comm'r of Social Security</u>, 710 F.3d 365, 375-76 (6th Cir.2013), that court said:

> As a general matter, an opinion from a medical source who has examined a claimant is given more weight than that from a source who has not performed an examination (a "nonexamining source"), [20 C.F.R.] § 404.1502, 404.1527(c)(1), and an opinion from a medical source who regularly treats the claimant (a "treating source") is afforded more weight than that from a source who has examined the claimant but does not have an ongoing treatment relationship (a "nontreating source"), <u>id</u>. § 404.1502, 404.1527(c)(2). In other words, "[t]he regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker." Soc. Sec. Rul. No. 96-6p, 1996 WL 374180, at *2 (Soc. Sec. Admin. July 2, 1996).
>
> The source of the opinion therefore dictates the process by which the Commissioner accords it weight. Treating-source opinions must be given "controlling weight" if two conditions are met: (1) the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) the opinion "is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). If the Commissioner does not give a treating-source opinion controlling weight, then the

>opinion is weighed based on the length, frequency, nature, and extent of the treatment relationship, id., as well as the treating source's area of specialty and the degree to which the opinion is consistent with the record as a whole and is supported by relevant evidence, id. § 404.1527(c)(2)-(6).
>
>The Commissioner is required to provide "good reasons" for discounting the weight given to a treating-source opinion. Id. § 404.1527(c)(2). These reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. Rul. No. 96-2p, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996). This procedural requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004).

The Commissioner concludes that the ALJ's decision satisfies these requirements, arguing that the ALJ correctly determined that the treatment notes did not support Dr. Borchers' views and that the ALJ was not required explicitly to mention the various factors set out in §404.1527(c) in his discussion. In reply, Plaintiff continues to focus on the ALJ's failure to mention those factors explicitly as the core of his claim, although he also characterizes the ALJ's decision as a "blend of the ALJ's own medical judgments and unsupported factual assertions." Reply Memorandum, Doc. 18, at 1-2.

    It is accurate to say that §404.1527(c) requires at least two things: that the ALJ give good reasons for rejecting the opinions of treating sources, and that the ALJ consider all of the factors which go into the evaluation of a treating source opinion. It is not, however, necessarily the case that an ALJ must discuss each of those factors explicitly, so long as the Court can determine that the ALJ was aware of the factors and gave good reasons for his ultimate determination not to give

controlling weight to the opinion in question, doing so in a fashion that allows for meaningful review.  That is, "there may be occasions where the ALJ has given the requisite 'good reasons' for rejecting a treating-source opinion and has considered the 20 C.F.R. § 404.1527 factors without explicitly discussing each such factor...." Blanchard v. Comm'r of Social Security, 2012 WL 1453970, *16-17 (Mar. 16, 2012) adopted and affirmed 2012 WL 1432589 (E.D. Mich. Apr. 25, 2012).  On the other hand, the combination of "[t]he ALJ's failure to consider the factors set forth in 20 C.F.R. §§ 404.1527(c)(2)-(6) ... in determining what weight to give [a treating source's] opinions, and [the] failure to provide 'good reasons' supported by substantial evidence for her decision to discount [those] opinions, require a reversal of [the administrative] decision." Jodrey v. Commissioner of Social Sec., 2013 WL 5981337 (S.D. Ohio Nov. 12, 2013), adopted and affirmed 2013 WL 6632633 (S.D. Ohio Dec. 17, 2013).

    The ALJ's "good reasons" amounted to a perceived inconsistency between Dr. Borchers' opinions and the "summarized medical evidence," along with the purported lack of evidence that Plaintiff's condition worsened after he stopped working.  There are problems with this analysis.  It is ordinarily not enough to summarize hundreds of pages of medical evidence and then to assert, in conclusory fashion, that a treating source opinion is inconsistent with or not supported by that entire body of evidence.  That is not sufficiently specific to allow for meaningful review. Cf. Wisecup v. Astrue, 2011 WL 3353870, *8 (S.D. Ohio July 15, 2011), adopted and affirmed 2011 WL 3360042 (S.D. Ohio Aug. 3, 2011).

    Here, the problem is lessened to some extent by the ALJ's comments on the evidence as he summarized it; he did point out, in that summary, those portions of the evidence which he believed did not support a claim of disability, such as the fact that Plaintiff did not receive extensive treatment for Crohn's disease

in the months following his November, 2010 surgery, that he often stated that his Crohn's symptoms were stable, and that he had improvements in his symptoms when he began to use Humira.  (Tr. 17-18).  But, as this Court has pointed out, speaking of a similar claimant, "there is no dispute over the fact that he has Crohn's disease with symptoms fluctuating in severity.  These fluctuations, of course, mean that Hale's medical records contain information showing that his symptoms were sometimes severe and sometimes not.  Consequently, the ALJ's use of 'inconsistent' and 'unsupported' as to Dr. Gaeke's opinion was based an overly selective reading of the record." Hale v. Colvin, 2014 WL 868124, *6 (S.D. Ohio March 5, 2014), adopted and affirmed 2014 WL 4829539 (S.D. Ohio Sept. 29, 2014).  This suggests that the long-term treating physician is particularly well-positioned to express views about the limitations arising from a patient's Crohn's disease, and the ALJ should keep this point in mind on remand.

    Further, the ALJ apparently concluded, at least in his direct discussion of Dr. Borchers' opinions, that the November, 2010 surgery was intended to treat Plaintiff's Crohn's disease, which it clearly was not.  Further, despite the ALJ's own summary of the records showing an increase in Plaintiff's Crohn's symptoms up to and following the surgery, to the point where, in January, 2012, Plaintiff began treatment with Humira (something he had resisted in the past due to its potential side effects), the ALJ commented that nothing had changed in the course of that disease which would justify an opinion that Plaintiff could no longer work as he had done so in the past.  That is an erroneous characterization of the record and one which does not provide substantial support for the ALJ's decision.  Coupled with the fact that Plaintiff had a long-term patient relationship with Dr. Borchers and that Dr. Borchers is a specialist in this area - factors not explicitly mentioned by the ALJ, and which undercut

-11-

to some extent the ALJ's ability to interpret Dr. Borchers' notes as inconsistent with his opinions - this is one of those cases, like <u>Jodrey</u>, where the combination of the failure to consider several important regulatory factors explicitly and the lack of substantial support for a good portion of the ALJ's decision mandate a remand for further evaluation of the evidence. Consequently, the Court recommends that Plaintiff's assignment of error be sustained.

## VII. <u>Recommended Decision</u>

Based on the above discussion, it is recommended that the Plaintiff's statement of errors be sustained to the extent that this case be remanded to the Commissioner for further proceedings pursuant to 42 U.S.C. §405(g), sentence four.

## VIII. <u>Procedure on Objections</u>

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a <u>de novo</u> determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation <u>de novo</u>, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. <u>See Thomas v.</u>

Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

                                            /s/ Terence P. Kemp
                                            United States Magistrate Judge